UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>CHRISTOPHER CLAYTON RHODES,<br><br>　　　　　　Defendant. | CASE NO. 2:22-cr-00142-TL<br><br>ORDER ON MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE |

　　　　Defendant Christopher Clayton Rhodes was sentenced to a term of imprisonment and supervised release following a guilty plea. This matter is now before the Court on Mr. Rhodes's Motion for Early Termination of Supervised Release. Dkt. No. 6. Having reviewed the Government's response (Dkt. No. 8) and the relevant record, the Court GRANTS the motion.

### I.　BACKGROUND

　　　　On January 13, 2020, Mr. Rhodes was sentenced in the Southern District of California to 41 months of imprisonment and five years of supervised release after pleading guilty to one count of Importation of Methamphetamine, 21 U.S.C. §§ 952 and 960. *United States v. Rhodes*,

No. CR19-2486, Dkt. No. 53 (S.D. Cal. Jan. 13, 2020). On January 14, 2022, Mr. Rhodes began his term of supervised release. *Id.*, Dkt. No. 55 at 1. On September 1, 2022, this matter was transferred to this District. Dkt. No. 1. Mr. Rhodes's term of supervised release is set to expire on January 13, 2027. *Id*.

Mr. Rhodes now brings the instant motion for early termination of supervised release. Dkt. No. 6. The Government opposes. Dkt. No. 8. United States Probation and Pretrial Services recommends that the motion be granted. Dkt. No. 9 (sealed).

## II.     LEGAL STANDARD

A district court has "broad discretion in determining whether to grant a motion to terminate supervised release." *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014) (citing 18 U.S.C. § 3583(e)(1); then citing *United States v. Hook*, 471 F.3d 766, 771 (7th Cir. 2006)). After considering certain sentencing factors set forth in 18 U.S.C. § 3553(a), a court may terminate a term of supervised release after one year has expired "if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). Those sentencing factors are:

- The nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1).

- The need to afford adequate deterrence to criminal conduct. 18 U.S.C. § 3553(a)(2)(B).

- The need to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(C).

- The need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2)(D).

- The kinds of sentence and the sentencing range established for the category of offense and category of defendant. 18 U.S.C. § 3553(a)(4).

- Any pertinent policy statement by the United States Sentencing Commission. 18 U.S.C. § 3553(a)(5).

- The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6).

- The need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(7).

Notably, a defendant is not required to demonstrate "undue hardship," *Emmett*, 749 F.3d at 819, or "exceptional behavior," *United States v. Ponce*, 22 F.4th 1045, 1047 (9th Cir. 2022). Instead, "a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination." *Emmett*, 749 F.3d at 819 (citing *United States v. Pregent*, 190 F.3d 279, 283 (4th Cir. 1999)). A court's explanation of its decision "must be sufficiently detailed to permit 'meaningful' appellate review, and it must state the court's reasons for rejecting 'nonfrivolous' arguments." *Id.* at 821 (quoting *United States v. Carty*, 520 F.3d 984, 992 (9th Cir. 2008)).

### III. DISCUSSION

Mr. Rhodes argues that his record under supervision, as well as his personal history and characteristics, support his request for early termination of supervised release. *See* Dkt. No. 6 at 3–4. He also points to guidance from the Judicial Conference of the United States that supports his release. *See id.* at 4–5. In opposition, the Government argues that "continued supervision, specifically random urinalysis, will benefit the defendant by providing continued accountability and incentive to prioritize his sobriety." Dkt. No. 8 at 2.

//

//

A.      **Sentencing Factors**

   1.   **Nature and Circumstances of Offense and History and Characteristics of Defendant**

The importation of illegal substances is undoubtedly serious, and Mr. Rhodes committed this offense less than one month after being sentenced for a drug-related offense in Arkansas. Dkt. No. 8 at 1 n.1. Therefore, this first factor weighs against early termination. 18 U.S.C. § 3553(a)(1).

However, as discussed *infra*, *see* Sections III.A.2–3, Mr. Rhodes's activities since pleading guilty demonstrate a better trajectory. The Court also notes that while Mr. Rhodes clearly had a rough period in his life around the time of his arrest for this offense, the Parties have not provided any other information regarding his criminal history or characteristics, so the Court cannot further evaluate this factor. The Court presumes that if Mr. Rhodes's history or characteristics were a significant factor, the Parties would have provided the information.[1]

   2.   **Need to Afford Adequate Deterrence and Protect the Public**

In considering these factors, the Court considers guidance offered by the Judicial Conference of the United States to probation regarding early termination. The Judicial Conference instructs probation officers that after 18 months of supervision, there is a presumption in favor of recommending early termination for persons who meet the following criteria:

>   (1)   The person does not meet the criteria of a career drug offender or career criminal (as described in 28 U.S.C. § 994(h)) or has not committed a sex offense or engaged in terrorism;
>
>   (2)   The person presents no identified risk of harm to the public or victims;

---

[1] The United States mentions that Mr. Rhodes's guideline range was 135–168 months in prison (*see* Dkt. No. 8 at 2), but that range is a possibility when a defendant has a criminal history category of I, II, III, or IV.

  (3)  The person is free from any court-reported violations over a 12-month period;

  (4)  The person demonstrates the ability to lawfully self-manage beyond the period of supervision;

  (5)  The person is in substantial compliance with all conditions of supervision; and

  (6)  The person engages in appropriate prosocial activities and receives sufficient prosocial support to remain lawful well beyond the period of supervision.

*See* Guide to Judiciary Policy, Vol. 8, Part E § 360.20(c) (last revised Oct. 20, 2023).

  Mr. Rhodes appears to meet these criteria. Mr. Rhodes does not appear to be a career drug offender or career criminal, as his only documented prior criminal history is the Arkansas drug conviction mentioned above. Dkt. No. 6 at 5; Dkt. No. 8 at 1 n.1. Probation states that Mr. Rhodes "does not appear to presently pose a risk to the community." Dkt. No. 9 at 2. They also state that he presents a "low/moderate risk to reoffend," (*id.*), and the Court notes that he has not had any court-reported violations in over 15 months (Dkt. No. 6 at 3). Further, Probation states that (1) Mr. Rhodes has "maintained sobriety and demonstrated [an] ability to lawfully self-manage beyond the period of supervision," and (2) is in "substantial compliance with all conditions of supervision." Dkt. No. 9 at 2. Finally, they believe that Mr. Rhodes "maintains a prosocial lifestyle" supported by "prosocial family and friends." *Id*. Based upon all these facts, Probation "recommend[s] Mr. Rhodes be granted an early termination from the term of supervised release imposed by the Court." *Id.*

  Therefore, these factors weigh in favor of early termination. 18 U.S.C. §§ 3553(a)(2)(B), 3553(a)(2)(c).

//

//

ORDER ON MOTION FOR
EARLY TERMINATION OF
SUPERVISED RELEASE - 5

### 3. Need to Provide Defendant with Training or Treatment

Mr. Rhodes completed the 500-hour Residential Drug Abuse Program ("RDAP") at the Bureau of Prisons, and upon release, he participated in a mental health program at Neighborcare Health and completed transitional drug treatment at Pioneer Human Services. *See* Dkt. No. 6 at 3; Dkt. No. 9 at 2; *see also* Dkt. No. 6-1 (RDAP certificate). Although Mr. Rhodes tested positive for alcohol use on two occasions in 2022, the last positive tests were recorded on September 26, 2022, and October 12, 2022, as a result of after-work drinks with co-workers and a job-related wine tasting. Dkt. No. 6 at 3. The Court in no way intends to minimize alcohol use, but it accepts the representation from Probation, who have been working with Mr. Rhodes for a significant amount of time and who state that he "appears to have insight into his history of substance abuse with his development of appropriate sober-living skills." Dkt. No. 9 at 2. The Court also notes that Mr. Rhodes' Judgment did not originally include a condition for abstinence from alcohol (Dkt. No. 6 at 3), indicating that there was not a specific concern with respect to alcohol abuse based upon his history. However, after Mr. Rhodes tested positive for ethanol at a check-in, such a provision was added to his conditions of supervision. *Id.* For over fifteen months now, Mr. Rhodes has not tested positive while being tested monthly. *Id.*

In addition, Mr. Rhodes secured employment soon after his release and currently maintains two jobs. *Id.* One employer calls him an "outstanding" employee with "nearly a perfect attendance record and an uplifting personality that has won over our staff as well as the customers." Dkt. No. 6-2 (letter from general manager of Vonn's 1000 Spirits). Mr. Rhodes also goes to the gym every day and participates in a local LGBT flag football league in the spring and summer. Dkt. No. 6 at 4.

For its part, the Government acknowledges that Mr. Rhodes "has done well on supervision in terms of maintain stable housing, sobriety, and employment" and states that these

"accomplishments" are "notable" considering his history of substance abuse, mental illness, and housing instability. Dkt. No. 8 at 2. Probation also states that it believes Mr. Rhodes "has derived the maximum benefit from supervision." Dkt. No. 9 at 2.

Therefore, as Mr. Rhodes has derived the "maximum benefit from supervision," this factor weighs in favor of early termination. 18 U.S.C. § 3553(a)(2)(D).

### 4. Pertinent Policy Statements by the United States Sentencing Commission

The Sentencing Commission "encourage[s]" courts to exercise their authority to terminate supervised release "in appropriate cases." U.S. Sent'g Guidelines Manual § 5D1.2 cmt. 5 (U.S. Sent'g Comm'n 2022); *see also United States v. Sandusky*, No. 22-50194, 2023 WL 3034264, at *2 (9th Cir. Apr. 21, 2023) (crediting this policy statement). Based upon the other factors previously discussed, the Court finds this case an appropriate one for early termination of supervised release.

Therefore, this factor weighs in favor of early termination. 18 U.S.C. § 3553(a)(5).

### 5. Kinds of Sentence and Sentencing Range

Neither Mr. Rhodes nor the Government offers any meaningful information as to this factor. While the Government mentions that Mr. Rhodes's original sentencing range was 135–168 months of imprisonment (*see* Dkt. No. 8 at 2), that range is available for defendants with four different criminal history categories. Thus, the Court cannot effectively evaluate this factor, particularly given that the original sentencing (and the attendant briefing and analysis) occurred in another District.

Therefore, this factor is neutral. 18 U.S.C. § 3553(a)(4).

### 6. Sentencing Disparities

Neither Mr. Rhodes nor the Government offers any information as to this factor. It is also unclear how the Court could evaluate disparities as they relate to length and conditions of

supervised release (rather than imprisonment), for which comparative data appears virtually nonexistent. At any rate, the factor of avoiding unwarranted disparities "would generally undermine the case specific inquiry required in evaluating a motion for early termination of supervised release, such that this factor has limited utility in this context." *United States v. Harris*, 258 F. Supp.3d 137, 145 (D.D.C. 2017); *cf. United States v. Timmons*, No. CR13-303, 2023 WL 1798797, at *3 (W.D. Pa. Feb. 7, 2023) (denying early termination but finding factors of sentencing range and disparities not "particularly relevant" to the case).

Therefore, this factor is neutral. 18 U.S.C. § 3553(a)(6).

**7.   Need to Provide Restitution**

The need to provide restitution is inapplicable to this matter. 18 U.S.C. § 3553(a)(7).

For these reasons, the Court finds that the sentencing factors, in their totality, weigh in favor of early termination of supervised release.

**B.   Whether Termination Is Warranted**

Having considered the sentencing factors, the Court must now determine whether early termination of supervised release "is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). In making this determination, the Court keeps in mind two principles. First, "[t]he congressional policy in providing for a term of supervised release after incarceration is to improve the odds of a successful transition from the prison to liberty." *See Johnson v. United States*, 529 U.S. 694, 708–09 (2000). Second, supervised release "fulfills rehabilitative ends, distinct from those served by incarceration" and "unlike incarceration, provides individuals with postconfinement assistance." *United States v. Johnson*, 529 U.S. 53, 59, 60 (2000); *see also Pepper v. United States*, 562 U.S. 476, 502 n.15 (2011) (observing that supervised release "serves an entirely different purpose than the sentence imposed under § 3553(a)").

By all accounts, Mr. Rhodes is a positive and engaged member of the community. As previously discussed, although he tested positive for alcohol use within his first year of release, abstention from the use of alcohol was not an initial condition of supervised release. In any event, Mr. Rhodes subsequently maintained sobriety while maintaining employment and engaging in prosocial activities. His term of supervised release has otherwise been flawless and, in many ways, exemplary. In this matter, early termination of supervised release would recognize (and support) Mr. Rhodes's significant reintegration into the community. Further, Mr. Rhodes' term of supervision in this case has already both provided him with postconfinement assistance and fulfilled rehabilitative needs as intended.

The Government's only argument against early termination is brief and simple: continued supervision would provide Mr. Rhodes "continued accountability" and "incentive to prioritize his sobriety." Dkt. No. 8 at 2. But Probation states that he "is a low/moderate risk to reoffend" and notes that he is assigned to their Low Intensity Supervision Caseload. Dkt. No. 9 at 1, 2. Strikingly, Probation also states that Mr. Rhodes "has derived the maximum benefit from supervision and does not appear to presently pose a risk to the community." *Id.* at 2. Mr. Rhodes used his time while incarcerated to complete a 500-hour treatment program. Dkt. No. 6 at 3. Mr. Rhodes's record of compliance with supervision since his release (including negative alcohol tests since October 2022), his participation in a mental health program, and his engagement with friends, family, and the community, demonstrate that he is holding himself accountable and prioritizing his sobriety to maintain his new, healthier lifestyle. Thus, although Mr. Rhodes has only served two of five years of supervision, the Court has some assurance that he will continue to be law-abiding. On the other hand, maintaining supervision for its own sake would be a waste of judicial resources and potentially counterproductive.

Finally, the Court observes that other courts in this Circuit have granted early termination of supervised release under similar circumstances. *See, e.g.*, *United States v. Olsen*, No. CR16-208, 2023 WL 7304987, at *2 (D. Idaho Nov. 3, 2023) (terminating supervised release nearly two years early where defendant pleaded guilty to conspiracy to distribute methamphetamine but was compliant with supervision, maintained employment, and had community and family relationships); *United States v. Smith*, No. CR15-13, 2022 WL 17251231, at *2 (D. Mont. Nov. 28, 2022) (terminating supervised release two years early where defendant was adjudged guilty of possession with intent to distribute methamphetamine but had no violations on supervision, demonstrated commitment to sobriety, was employed, and participated in community activities); *United States v. Sainz*, Nos. CR11-640, CR11-712, CR11-894, 2022 WL 5052630, at *2 (N.D. Cal. Aug. 16, 2022) (terminating supervised release over two years early where defendant allegedly participated in methamphetamine distribution conspiracy and probation opposed motion, but defendant completed mental health and substance use treatment, reestablished family relationships, maintained employment, and bought a home).

For these reasons—and based on the specific facts presented in this case—the Court finds that early termination of Mr. Rhodes's supervised release is warranted by Mr. Rhodes's conduct and the interest of justice.

### IV.   CONCLUSION

Accordingly, Mr. Rhodes's Motion for Early Termination of Supervised Release (Dkt. No. 6) is GRANTED.

Dated this 16th day of January 2024.

Tana Lin
United States District Judge